# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00271-CR

**Robert Alba, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. 9044021, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Robert Alba appeals from his conviction by a jury for the offense of injury to a child with serious bodily injury and an affirmative finding of use of a deadly weapon during the commission of the offense. *See* Tex. Pen. Code Ann. § 22.04 (West Supp. 2006). Alba argues that the district court erred by failing to suppress his videotaped confession. We hold that the district court properly admitted the confession and affirm the conviction.

## BACKGROUND

On November 20, 2002, Alba and his girlfriend, Olivia Monica Nino, took their seven-week-old son to the emergency room after his babysitter informed them that she noticed that their son's leg was swollen. At the time, Nino and Alba were not married but were living together with both of their sons. The child's doctor discovered that the child had a fractured femur, an

unusual injury for a seven-week-old child. The doctor took a series of x-rays that revealed at least ten additional bone fractures, including broken ribs and a fractured skull, in various stages of healing. Based on these results, Child Protective Services and the child abuse unit of the Austin Police Department (APD) began an investigation to determine how the injuries occurred and if the child was living in a safe environment. After the initial investigation, the child was removed from Nino and Alba's care and placed with Nino's parents.

The next day, Nino and Alba contacted APD to talk with Detective Taylor, the detective assigned to their case. They decided to meet Taylor at his office the same day to discuss the case. After arriving at the office, Taylor advised Alba of his rights and told him that he was free to go at any time; Alba waived his rights and spoke with Taylor. During the interview, Alba told Taylor that he accidently injured his child. He stated that he was holding his child as he stood up, tripped over a toy, and fell with the child. After the interview concluded, Alba and Taylor made arrangements to have a second interview.

On December 2, 2002, Detective Stephenson joined Taylor to interview Alba. Taylor and Stephenson informed Alba that he was not in custody and that he was free to leave at any time. Alba then waived his rights and began the interview. During the interview, Alba stated that he had caused his child's injuries by squeezing him, shaking him, and repeatedly shoving him against the wall. He also demonstrated these actions on a doll in the interview room. Alba was subsequently charged with causing serious bodily injury to a child. Alba pleaded not guilty and filed a motion to suppress the videotape of his statement during the second interview. The district court held a pretrial hearing, overruled Alba's motion, and allowed the videotaped statement to be admitted at trial. A

jury found Alba guilty and assessed his punishment at twelve years in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

## DISCUSSION

Alba contends that the district court erred in failing to suppress the videotaped confession because the detectives (1) were threatening and coercive and (2) made improper promises.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We will apply a deferential review of the trial court's determination of the historical facts and a de novo review of the law's application to those facts. *See Carmouche*, 10 S.W.3d at 327. When the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's rulings on mixed questions of law and fact. *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002).

A statement made by the accused may be used in evidence against him if it appears that it was freely and voluntarily made without compulsion or persuasion. Tex. Code Crim. Proc. Ann. art. 38.21 (West Supp. 2006); *State v. Terrazas*, 4 S.W.3d 720, 723 (Tex. Crim. App. 1999). Whether the accused's statement is voluntary is determined from all the circumstances surrounding his making the statement. *See Penry v. State*, 903 S.W.2d 715, 748 (Tex. Crim. App. 1995), *cert. denied*, 516 U.S. 977 (1995). A statement is not voluntary if there is "official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an

3

essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).

**Coercive and Threatening Statements**

First, Alba claims that his statement was not voluntary because Taylor and Stephenson were threatening and coercive during his interview. Specifically, Alba contends that Taylor and Stephenson told him that (1) "if you're not telling it truthful, we can't protect the child"; (2) "if you don't want us to help you, we're here to take the child"[1]; (3) "[w]e're going to do everything we can to you—to make sure the court punishes you to the fullest extent"; and (4) "[t]hese kids need to be with their parents. [Their mother is] going to lose them—they're not going to have either of you."

At trial, Alba filed a supplemental motion to suppress his videotaped statement. During the suppression hearing, Taylor testified that Alba attended the interview of his own free will and was free to leave at any time. The district court denied the motion and entered findings of fact and conclusions of law. The court found that (1) Alba was not in custody and had not previously been arrested in relation to this case when he made the statements in question, (2) the statement was made freely and voluntarily, (3) the police did not engage in any conduct that was so coercive in nature that Alba's free will was overborne, (4) the police did not threaten Alba with any physical harm, and (5) the police did not make any promises that were of such an influential nature that Alba

---

[1] Although Alba insists that the officer stated, "if you don't want us to help you, we're here to take the child," our review of the video reveals that the officer said "if you don't want us to help you, we're here to protect the child."

4

would speak untruthfully. The court concluded that the videotaped statement was admissible as a matter of law and fact.

The record supports the district court's findings that Alba was not in custody when the statements were made. The video of the interview shows that, as soon as Alba entered the interrogation room, Taylor and Stephenson told him that the door was open and unlocked. Although they read him his rights, they reminded him that he could terminate the interview and leave at any time. Alba then waived his rights and began the interview.

The record also supports the district court's findings that Alba's statement was made voluntarily, that the police did not engage in conduct so coercive that it overcame Alba's free will, and that the police did not threaten Alba. The video demonstrates that Alba confessed approximately thirty minutes after the interview started. During the interview, Taylor and Stephenson never yelled at Alba, never physically threatened him, and never made an improper statement of the law. Considering the allegedly improper statements in light of the all the surrounding circumstances, none of the statements were of such a coercive or threatening nature as to make Alba's confession involuntary. Further, although the officers made statements attempting to make Alba feel guilty or remorseful, none of these statements were so coercive that Alba's free will would have been overwhelmed. Because the record supports the district court's determination that Alba made the statement freely and voluntarily, we conclude that the district court properly admitted Alba's confession into evidence. Accordingly, we overrule Alba's first point.

**Promises**

Second, Alba contends that his confession was not voluntary because he was influenced by promises made to him by Taylor. Toward the end of the interview, Taylor said, "We'll

5

help you with the court. We'll talk to the District Attorney about it, because we'll tell them you are cooperative."

It is unnecessary for us to consider whether the officer's statements were improper. For a promise to render a confession involuntary, the promise must be (1) of some benefit to the defendant, (2) positive, (3) made or sanctioned by a person in authority, and (4) of such character as would be likely to influence the defendant to speak untruthfully. *Henderson*, 962 S.W.2d at 564. The allegedly improper statements were made after Alba confessed to injuring his son on more than one occasion and after Alba had demonstrated on a doll how he had injured the child, and Alba made no additional inculpatory statements after the officer made the statements in question. Therefore, the officer's statements did not persuade him to confess. Accordingly, we overrule Alba's second point of error.

## CONCLUSION

Because we overrule all of Alba's issues on appeal, we affirm the judgment of conviction entered by the district court.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: November 29, 2006

Do Not Publish